**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

PATHFINDER MANAGEMENT, INC., and
RADIANT TECHNOLOGIES, INC.,
              Plaintiffs,

     v.

MAYNE PHARMA PTY, an Australian
Corporation; SYMBION HEALTH, LTD., an
Australian Corporation (formerly known as
MAYNE GROUP LTD, an Australian Corporation);
MAYNE PHARMA (USA) INC., a Delaware
Corporation; FAULDING CONSUMER
HOLDINGS, INC., a  Delaware Corporation;
SYMBION PHARMACY SERVICE PTY, LTD, an
Australian Corporation; FAULDING HEALTH-
CARE INTERNATIONAL  HOLDINGS, INC., a
Delaware Corporation; FAULDING
HEALTHCARE US  HOLDINGS, INC., a
Delaware Corporation; ABC CORPORATIONS 1
THROUGH 10 (as fictitious entities); STUART
HINCHEN, individually; JOHN WINNING,
individually; ANDREW VIDLER, individually;
FRANK SCANLAN, individually, and JOHN DOE
DEFENDANTS 1 through 10 (as fictitious persons),
              Defendants.

Civil Action No.:  06-2204 (WJM)

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS THE AMENDED COMPLAINT

William D. Wallach
Richard Hernandez
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Joseph Goldberg
Joel M. Wolosky
**HODGSON RUSS LLP**
230 Park Avenue, 17th Floor
New York, New York 10169
Attorneys for Defendants

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF THE FACTS ALLEGED IN THE COMPLAINT............................4

    A.    The Parties ......................................................................................4
    B.    The Stock Transaction At Issue ....................................................6
    C.    The Alleged Misrepresentations ...................................................6
    D.    The Purchase Agreement ...............................................................8

I.    ALL CAUSES OF ACTION SHOULD BE DISMISSED AS AGAINST THOSE DEFENDANTS AS TO WHOM NO BASES FOR LIABILITY ARE ALLEGED ......................................................................................10

II.    THIS COURT LACKS PERSONAL JURISDICTION OVER MANY OF THE DEFENDANTS.........................................................................................11

    A.    General Jurisdiction .....................................................................13
    B.    Specific Jurisdiction.....................................................................14

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR A FEDERAL RICO VIOLATION...............................................................................................17

    A.    The Rico Claim Must Be Dismissed Because It Is Based Upon Conduct Actionable As Securities Fraud.............................................18
    B.    The Rico Claim Must Be Dismissed Because Plaintiffs Do Not Properly Allege The Existence Of An Enterprise.................................20
    C.    The Rico Claim Must Be Dismissed Because Plaintiffs Do Not Allege A Pattern Of Racketeering Activity .......................................20
    D.    To The Extent Plaintiffs Are Alleging A Rico Conspiracy Claim Under § 1962(D), This Claim Fails Because There Is No Viable Substantive Rico Claim Alleged...........................................................22
    E.    Plaintiffs Fail To Satisfy Rule 9(B) ....................................................22

IV.    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED DUE TO THEIR FAILURE TO PLEAD AN INDEPENDENT BASIS FOR FEDERAL SUBJECT MATTER JURISDICTION .......................................23

V.    PLAINTIFFS' STATE LAW CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...............................................25

    A.    Count Two Fails To State A Claim For A Violation Of The New Jersey Rico Statute.................................................................................25
    B.    Count Three Fails To State A Claim For Common Law Conspiracy....................26
    C.    Count Four Fails To State A Claim For Fraudulent Misrepresentation...............................................................................27
    D.    Count Five Fails To State A Claim For Negligent Misrepresentation...............................................................................31

## TABLE OF CONTENTS *(Continued)*

**Page**

      E.      Count Six Fails to State a Claim for Tortious Interference With
             Potential Economic Benefit ............................................................................... 32

      F.      Count Seven Fails to State a Claim for Breach of Contract ................................... 33

      G.     Count Eight Fails to State a Claim for Breach of Implied Duty of
             Good Faith and Fair Dealing............................................................................... 36

CONCLUSION............................................................................................................................. 38

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alexander v. CIGNA Corp.*, 991 F. Supp. 427 (D.N.J. 1998)......................................27, 29

*Aquarium Pharms., Inc. v. Richard Boyd Enterprises, Inc.*, 1991 WL. 280650
    (E.D. Pa. Dec. 26, 1991) ......................................................................................13, 14

*Avins v. Hannu*, 497 F. Supp. 930 (E.D. Pa. 1980)..............................................................24

*Bald Eagle Area Sch. District v. Keystone Financial, Inc.*, 189 F.3d 321 (3d Cir.
    1999) ..................................................................................................................18, 19

*Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999).............................34

*Bloch v. State Farm Insurance Cos.*, 1991 U.S. Dist. LEXIS 14234 (E.D. Pa. Oct.
    2, 1991) ....................................................................................................................17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174
    (1985).............................................................................................................14, 15, 16

*Burton v. Ken-Crest Svcs., Inc.*, 127 F. Supp. 2d 673 (E.D. Pa. 2001).............................19

*Carlsberg Resources Corp. v. Cambria Savings and Loan Associate*, 554 F.2d
    1254 (1977)...............................................................................................................23

*Carolina Casualty Insurance Co. v. Insurance Co. of North America*, 595 F.2d
    128 (3d Cir. 1979).....................................................................................................24

*Carteret Savings Bank v. Shishan*, 954 F.2d 141 (3d Cir. 1992).......................................12

*Cedric Kusher Promotions, Ltd. v. King*, 533 U.S. 158, 121 S. Ct. 2087 (2001)..............20

*Chemical Leaman Tank Lines, Inc. v. Aetna Casualty Insurance & Surety Co.*,
    177 F.3d 210 (3d Cir. 1999)......................................................................................24

*Days Inns of America, Inc. v. VNR, Inc.*, 1999 U.S. Dist. LEXIS 23434 (D.N.J.
    March 23, 1999).........................................................................................................27

*Dian v. Gates*, 354 F.3d 1169 (9th Cir. 2004) ...................................................................17

*Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998).............26, 27, 30, 31

*Fraley v. Chesapeake & Ohio Railway Co.*, 397 F.2d 1 (3d Cir. 1968)............................12

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S. Ct. 2893
    (1989)........................................................................................................................21

**TABLE OF AUTHORITIES** *(Continued)*

**Page**

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 80 L. Ed. 2d 404, 104  S. Ct. 1868 (1984) .................................................................................................. 13

*Imo Industrial v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1989) .............................. 11, 12, 13, 15

*International Shoe v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945) ...................................................................................................... 11, 12, 14, 16

*Koch Materials Co. v. Shore Slurry Seal, Inc.*, 2005 U.S. Dist. LEXIS 9486 (D.N.J. Jan. 13, 2005) ................................................................................................... 29

*Kounelis v. Sherrer*, 2005 U.S. Dist. LEXIS 20070 (D.N.J. Sept. 6, 2005) ...................... 11

*Leonard v. Shearson Lehman/American Express, Inc.*, 687 F. Supp. 177 (E.D. Pa. 1988) ............................................................................................................................ 22

*Lightning Lube, Inc. v. WITCO Corp.*, 4 F.3d 1153 (3d Cor. 1993) .................................. 22

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) ...................................................... 6

*Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156 (3d Cir. 1998) ........................... 18

*Mellon Bank (East) PSFS, National Association v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ............................................................................................................................ 16

*Mesalic v. Fiberfloat Corp.*, 897 F.2d 696 (3d. Cir. 1990) .......................................... 12, 16

*Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048 (E.D. Pa. 1994) ......... 12

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331  F.3d 406 (3d Cir. 2003) ................................................................................................... 26

*Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 1999) .............................................................................................................. 30

*Only v. Ascent Media Group, LLC*, 2006 U.S. Dist. LEXIS 72676 (D.N.J. Oct. 5, 2006) ............................................................................................................................ 33

*Overseas Food Trading, Ltd. v. Agro Acietunera S.A.*, 2006 U.S. Dist. LEXIS 60814 (D.N.J. Aug. 28, 2006) ................................................................................... 34, 35

*Panella v. O'Brien*, 2006 U.S. Dist. LEXIS 59880 (D.N.J. Aug. 24, 2006) ...................... 31

*Pennzoil Products Co. v. Colelli & Associate, Inc.*, 149 F.3d 197 (3d Cir. 1988) ............ 16

## TABLE OF AUTHORITIES *(Continued)*

**Page**

*Peters v. U.S. Department of Housing & Urban Dev't*, 2006 U.S. Dist. LEXIS
 4727 (D.N.J. Feb. 1, 2006)..............................................................................*in passim*

*Peterson v. Mister Donut of America, Inc.*, 1988 U.S. Dist. LEXIS 6570 (D.N.J.
 July 6, 1988)..................................................................................................................28

*Poling v. K Hovnanian Enterprises*, 99 F. Supp. 2d 502 (D.N.J. 2000)............................23

*Professional Cleaning and Innovative Building Serv., Inc. v. Kennedy Funding,
 Inc.*, 2005 U.S. Dist. LEXIS 17024 (D.N.J. Aug. 11, 2005) ........................................27

*Reliance Steel Products Co. v. Watson, Ess, Marshall, & Engass*, 675 F.2d 587
 (3d Cir. 1982).................................................................................................................13

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) ......................22

*Seville Industrial Machine Corp. v. Southmost Machine Corp.*, 742 F.2d 786 (3d
 Cir. 1984) ......................................................................................................................30

*Shaffer v. Heitner*, 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977) ......................12

*Strain v. Harrelson Rubber Co.*, 752 F.2d 888 (5th Cir. 1984).........................................24

*St. Matthew's Baptist Church v. Wachovia Bank National Association*, 2005 WL
 1199045 (D.N.J. May 18, 2005) .............................................................................28, 31

*Sutton v. New Century Finance Serv.*, 2006 U.S. Dist. LEXIS 68300 (D.N.J. Sept.
 11, 2006) ........................................................................................................................37

*Thomas v. Board of Trustees*, 195 U.S. 207, 49 L. Ed. 160, 25 S. Ct. 24 (1904).............23

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1996) ......................................24

*Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d
 147 (3d Cir. 1996)..........................................................................................................14

*Wims v. Beach Terrace Motor Inn, Inc.*, 759 F. Supp. 264 (E.D. Pa 1991) ......................15

*Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 118 S. Ct. 2047,
 141 L. Ed. 2d 364 (1998)...............................................................................................23

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559 (1980)..........16

*Zavala v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 60808 (D.N.J. Aug. 28,
 2006) ..............................................................................................................................20

## TABLE OF AUTHORITIES *(Continued)*

**Page**

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ..................................................................................................................... 14

### STATE CASES

*Association Group Life, Inc. v. Catholic War Veterans of United States*, 61 N.J. 150 ............................................................................................................................ 37

*Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570 (App. Div. 1991) ...................... 28

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582 (1997) ...................................................... 27

*Kaufman v. I-Stat Corp.*, 165 N.J. 94 (2000) ...................................................................... 31

*Marbro, Inc. v. Borough of Tinton Falls*, 297 N.J. Super. 411 (Law Div. 1993) .............. 26

*Morgan v. Union County Board of Freeholders*, 268 N.J. Super. 337 (App. Div. 1993) ...................................................................................................................... 26

*Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739 (1989) ................... 33

*Stopford v. Boonton Molding Co., Inc.*, 56 N.J. 169 (1970) .............................................. 34

*Wade v. Kessler Institute*, 343 N.J. Super. 338 (App. Div. 2001) ..................................... 37

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001) ........................................................ 37

### FEDERAL STATUTES

28 U.S.C. §1332(c) ................................................................................................................ 24

28 U.S.C. § 1367(c)(3) .......................................................................................................... 24

18 U.S.C. § 1961, *et seq.* ...................................................................................................... 21

18 U.S.C. § 1962, *et seq.* ............................................................................................ 17, 20, 22

18 U.S.C. § 1964(c) ........................................................................................................ 17, 18

### STATE STATUTES

N.J.S.A. § 2C:41-1, *et seq.* ............................................................................................... 20, 25

N.J.S.A. § 2C:20-4 ................................................................................................................ 20

N.J.S.A. § 2C:5-2 .................................................................................................................. 20

## TABLE OF AUTHORITIES *(Continued)*

## OTHER AUTHORITY

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1248 at 313-14 (2d ed. 1990) .................................................................................................11

Fed. R. Civ. P. 8 .................................................................................................................11

Fed. R. Civ. P. 9(b) .....................................................................................................22, 30

N.J. Ct. R. § 4:4-4 .............................................................................................................12

Defendants, Mayne Pharma Pty, Symbion Health, Ltd., Mayne Pharma (USA) Inc.,

Faulding Consumer Holdings, Inc., Symbion Pharmacy Service Pty, Ltd., Faulding Health-Care

International Holdings, Inc., Faulding Healthcare US Holdings, Inc., Stuart Hinchen, John

Winning, Andrew Vidler, and Frank Scanlan, submit this memorandum of law in support of their

motion pursuant to Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure to

dismiss the Amended Complaint in this action.

## PRELIMINARY STATEMENT

This action arises from a Purchase Agreement dated March 10, 2003 between Plaintiff

Pathfinder Management, Inc. ("Pathfinder") and Defendant Faulding Consumer Holdings, Inc.

("FCHI") to purchase the stock of two of FCHI's subsidiaries.  Recognizing that most, if not all,

of Plaintiffs' claims are barred by the express provisions of the Purchase Agreement, Plaintiffs

have brought this action against six additional corporate defendants, as well as against four

individual defendants.  Significantly, none of the six corporate defendants or the individual

defendants are a party to or guarantor of FCHI's obligations under the Purchase Agreement, and

the Amended Complaint does not allege otherwise.  More puzzling still is the decision to name

Radiant Technologies, Inc. ("Radiant") as a plaintiff when it was not a party to the Purchase

Agreement and is not alleged to have succeeded to any of Pathfinder's rights under the Purchase

Agreement.

Even a cursory review of the Amended Complaint reveals that it is nothing more than an

attempt to elevate a deficient breach of contract claim into a viable RICO or fraud claim.  The

Amended Complaint alleges the following eight causes of action against all of the corporate and

individual defendants in blunderbuss fashion: (1) a federal RICO claim; (2) a New Jersey RICO

claim; (3) a common law conspiracy claim; (4) a fraudulent misrepresentation claim; (5) a

negligent misrepresentation claim; (6) a claim for tortious interference with potential economic

- 1 -

benefit; (7) a breach of contract claim; and (8) a claim for breach of implied duty of good faith and fair dealing. In essence, plaintiffs assert that certain alleged oral misrepresentations were made to Pathfinder during the course of its negotiations with FCHI which resulted in Pathfinder entering into the Purchase Agreement. Plaintiffs advance these allegations despite various provisions in the Purchase Agreement acknowledging that there were no representations or warranties made by FCHI of any kind except those set forth in the Purchase Agreement and stating that the purchase was "as is," "where is," and "with all faults."

Plaintiffs' Amended Complaint should be dismissed for the following six independent reasons. First, the Amended Complaint should be dismissed in its entirety as against those defendants as to whom no substantive allegations are made. With respect to one of the corporate defendants, Mayne Pharma (USA) Inc., there is a single substantive allegation (that Pathfinder wired money to it). Excepting FCHI, there is not a single substantive allegation concerning the other five named corporate defendants. With respect to defendant Frank Scanlan, there is not a single substantive allegation. Although allegations are made concerning the three other individual defendants, the Amended Complaint does not even attempt to identify, let alone particularize, the specific actions allegedly taken by each such defendant.

Second, this Court lacks personal jurisdiction to adjudicate plaintiffs' claims over three of the four individual defendants, Messrs. Scanlan, Vidler and Winning, and all of the corporate defendants except Mayne Pharma (USA) and FCHI. These eight defendants have never resided or conducted any business in New Jersey. The fact that the Purchase Agreement was allegedly entered into in the State of New Jersey cannot, as a matter of law, bind the non-party individual and corporate defendants to the Agreement or confer this Court with personal jurisdiction over them.

- 2 -

Third, Plaintiffs' Amended Complaint does not set forth a legally sufficient federal RICO claim. The federal RICO claim should be dismissed because the claim: 1) is improperly based upon conduct actionable as securities fraud; 2) fails to properly allege the existence of an enterprise; 3) fails to allege a pattern of racketeering activity; 4) fails to allege a viable substantive RICO claim; and 5) fails to meet the requirements of Rule 9(b). Plaintiffs' federal RICO claim is the only basis for this Court to assert subject matter jurisdiction in this matter. If Plaintiff's federal RICO claim is dismissed, as it should be, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Fourth, even if this Court determines that it has jurisdiction over Plaintiffs' state law claims, these additional claims should be dismissed. Plaintiffs' state RICO claim is defective due to the failure to allege a pattern of racketeering activity and the failure to comply with Rule 9(b). Plaintiffs' fraud and negligent misrepresentation claims are deficient for a number of reasons, including the failure to plead its fraud claim with particularity and the inability to establish justifiable reliance in the face of the Purchase Agreement's explicit language. Although plaintiffs assert that "defendants" made various misrepresentations during the due diligence phase preceding the purchase, they have not identified who made these representations, to whom they were made, or when they were made. The Purchase Agreement unequivocally states that the writings contain the final and only agreements between the parties and that FCHI did not make any representation or warranty respecting the accuracy or completeness of any information provided to Pathfinder other than as set forth in the Agreement. As a matter of law, plaintiffs could not have reasonably or justifiably relied on an alleged oral term or representation that was expressly contradicted by the Purchase Agreement.

Fifth, as a preliminary matter, plaintiffs' contract or quasi-contract causes of action should be dismissed as against all defendants other than FCHI because not one of the other defendants was a party to the Purchase Agreement. The claims against FCHI should be dismissed for the additional reason that a party cannot rely upon an oral promise which is contradicted by a written agreement evidencing the same transaction. Although plaintiffs claim to have relied on the alleged misrepresentations, they expressly agreed in the Purchase Agreement that FCHI was making no representations other than those expressly set forth in the Agreement. Accordingly, plaintiffs' contract action boils down to nothing more than a claimed oral agreement or oral promise that is barred by the parol evidence rule.

Finally, Plaintiffs' contract claims and additional state law claims are time-barred pursuant to the express terms of the Purchase Agreement.

## STATEMENT OF THE FACTS ALLEGED IN THE COMPLAINT[1]

### A.    The Parties

The Amended Complaint names two plaintiffs. Pathfinder, alleged to be a Nevada corporation with its principal place of business in Tennessee (Amended Complaint ("AC") ¶ 1), was the purchaser in the transaction at issue. The other named plaintiff is Radiant, alleged to be a Florida corporation with its principal place of business in Tennessee (AC ¶ 2). It is not clear why Radiant is named as a plaintiff.

The Amended Complaint names four individual defendants: Stuart Hinchen, alleged to have been the president of Mayne Pharma (USA), Inc.; John Winning, alleged to have been the national sales manager for FCHI; Andrew Vidler, alleged to have been the vice president of

---

[1]    The "facts" are drawn from the allegations in the Amended Complaint and the documents referenced therein. For purposes of this motion, the Court is required to presume the accuracy of all well-pleaded factual allegations. However, defendants do not concede and in fact will dispute the accuracy of such allegations at the appropriate time.

- 4 -

Faulding Consumer, Inc.; and Frank Scanlan, alleged to have been the controller of FCHI.  (AC ¶¶ 11-14).  Mr. Hinchen is alleged to be a "citizen of the United States."  (AC ¶ 11).  Mr. Winning is alleged to be a citizen of Canada, and as his declaration establishes, he is domiciled in Florida.  *See* Declaration of John W. Winning, dated Nov. 29, 2006, ¶ 4.  Mr. Vidler is alleged to be a citizen of Australia, and he is domiciled there as well.  *See* Declaration of Andrew Vidler, dated Nov. 30, 2006 ¶ 3.  Finally, Mr. Scanlan is alleged to be a "citizen of the United States," (AC ¶ 13), and he is domiciled in Florida.  *See* Declaration of Frank Scanlan, dated Nov. 29, 2006, ¶ 3.

The Amended Complaint names seven corporate defendants.  Symbion Health, Ltd., Mayne Pharma PTY and Symbion Pharmacy Services (collectively the "Australian Companies") are organized pursuant to the laws of Australia and maintain their principal places of business in Australia.  *See* Declaration of Simon Loftus, dated Dec. 5, 2006, ¶ 2.  Faulding International, Faulding Holdings and Faulding US (collectively the "Faulding Companies") are Delaware corporations that have dissolved and conduct no business anywhere.  *Id.* ¶ 3.  Neither the Australian Companies nor the Faulding Companies: (i) do or transact any business in New Jersey, (ii) maintain a place of business in New Jersey, (iii) have any employees, agents, partners or joint ventures in New Jersey, (iv) has ever been licensed or authorized to do business in New Jersey, or (v) has a registered agent for service of process in New Jersey.  *Id.* ¶ 4.  In like measure, neither the Australian Companies nor the Faulding Companies own or lease any real estate or personal property in New Jersey or maintain any bank accounts or telephone lines, or pay any taxes in New Jersey.  *Id.*  Mayne Pharma (USA), Inc. is alleged to be a Delaware corporation with its principal place of business in New Jersey.  (AC ¶ 5).

**B.    The Stock Transaction At Issue**

The Amended Complaint alleges that plaintiff Pathfinder and defendant FCHI closed a

transaction on or about April 3, 2003, by which Pathfinder purchased from FCHI all of the

outstanding shares of two of FCHI's subsidiaries, Faulding Consumer, Inc. and Faulding

Healthcare (IP) Holdings, Inc. (the "Acquired Companies").  (AC ¶ 22).  Plaintiffs allege that the

Purchase Agreement specified January 1, 2003 as the "Effective Date" of the agreement.  (AC ¶

23).  The Purchase Agreement, which plaintiffs did not attach to the Amended Complaint, is

attached to the Declaration of Richard Hernandez as Exhibit 1.[2]  Although the Amended

Complaint does not describe the Acquired Companies' business, the Purchase Agreement shows

that the Acquired Companies had "the right to manufacture, market and sell sun and skin care

products under the trademark Sea & Ski®" worldwide, except for Australia and New Zealand.

Hernandez Dec., Ex. 1., p.1, A.

**C.    The Alleged Misrepresentations**

The Amended Complaint alleges that during the due diligence phase of the negotiations

for the stock purchase, unspecified "Pathfinder personnel" met with defendants Andrew Vidler

and John Winning, who made a presentation about the sun care industry, the Acquired

Companies' accounts, and sales histories and projections for the Acquired Companies' major

retail accounts. (AC ¶ 24).  The date of this meeting is not alleged.  Plaintiffs allege that during

this presentation, statements were made regarding outstanding return merchandise and holdbacks

that "proved to be willfully false."  (AC ¶ 24).  The Amended Complaint does not identify the

speaker of these alleged misrepresentations, other than to state that they were made by

"defendants." (AC ¶ 24).  Plaintiffs go on to allege that "[d]efendants" made additional

---

[2]    The Court may, on this Rule 12(b)(6) motion, consider the Purchase Agreement, as this document is integral to
the Complaint's allegations. *See Lum v. Bank of America,* 361 F.3d 217, 222 n.3 (3d Cir. 2004).

misrepresentations about, among other things, the amount of net sales in 2002, the Sea & Ski

brand's share of the sun care market, the resolution of a staining problem with the product, and

sales projections for 2003. (AC ¶ 25).

The Amended Complaint also alleges that unspecified "Pathfinder personnel,"

accompanied by defendants Stuart Hinchen, Winning, Vidler, and a warehouse manager,

inspected the Acquired Companies' warehouse. Plaintiffs do not allege the date of this

inspection. Plaintiffs claim that Pathfinder was told by "Defendants" that the inventory in the

warehouse was not defective inventory, and that these "statements have since proven to be

false." (AC ¶ 26).

The Amended Complaint alleges that after completing due diligence, the parties agreed

upon an initial purchase price of $3,500,000, but that Defendants then "demanded" an additional

$1,600,000. (AC ¶ 27). Plaintiffs claim that Pathfinder then reviewed a revised schedule of

liabilities prepared by FCHI and learned of a "significant credit" in favor of a customer. (AC ¶

28). Plaintiffs allege that following this disclosure, there was a telephone discussion between

unidentified Pathfinder personnel, Hinchen, and "Defendants' counsel," during which Plaintiffs

claim Pathfinder learned that there were outstanding credits, or "negative receivables," totaling

almost $1,000,000 and that Pathfinder "was expected to satisfy these credits against the

'positive' accounts receivable from 2002 in approximately the same amount." (AC ¶ 28).

Plaintiffs allege that Pathfinder agreed to raise the purchase price if the positive accounts

receivable represented "new money" that "fell outside of its due diligence investigation in

preparing its offer to purchase," and that "[d]efendants misrepresented that the 'positive'

accounts receivable represented 'new money.'" (AC ¶ 28).

The Amended Complaint goes on to allege that unidentified persons, on unidentified dates, made various misrepresentations about the negative and positive receivables, and that based on these representations, Pathfinder agreed to pay an additional $1,100,000 for the assumption of the accounts receivable. (AC ¶¶ 28-30). Pathfinder and FCHI then entered into the Purchase Agreement, which states that it is dated "as of March 10, 2003." Hernandez Dec., Ex. 1, cover page.

Pursuant to the Purchase Agreement, Pathfinder transmitted $4,600,000, to Mayne Pharma (USA), an affiliated corporation of FCHI, on or about April 4, 2003, in exchange for the stock of the Acquired Companies. (AC ¶ 30). Plaintiffs claim that "[w]ithin months of the closing, and up to and including December 2005, Pathfinder experienced return products from many of Defendants' customers, which vastly exceeded the representations of Defendants." (AC ¶ 31). Plaintiffs additionally claim that between the January 1, 2003 effective date and the April 4, 2003 closing date, defendants posted returns "in excess of $3MM," without notice to Pathfinder. (AC ¶ 32).

## D.   **The Purchase Agreement**

Notably absent from Plaintiffs' allegations is any reference to the express provisions of the Purchase Agreement in which the parties specifically agreed to the nature and type of representations that were being made and on which the parties could rely. The Purchase Agreement sets forth the specific representations and warranties made by FCHI in Article 3. The Agreement expressly states that there are no other representations or warranties:

> *Except for the representations and warranties contained in this Article 3 (including the Schedules, and the Related Instruments), the Seller makes no other express or implied representation or warranty on behalf of the Seller or any of their Affiliates.*

- 8 -

Hernandez Dec., Ex. 1, § 3.17 (emphasis added). There is a reciprocal disclaimer of other representations and warranties by Pathfinder. *Id.* § 4.8. The parties further agreed that the representations and warranties in the Agreement would terminate on the 18-month anniversary of the closing date, *i.e.*, not later than September 10, 2004. *Id.* § 8.1.

The Agreement also contains provisions regarding certain limited instances in which the parties would agree to indemnify each other, generally relating to the express representations and warranties contained elsewhere in the Purchase Agreement. *Id.* §§ 8.2 - 8.3. The parties agreed that their:

> sole and exclusive remedy after Closing with respect to any and all claims and causes of action relating to this Agreement . . . , the Shares, the Assumed Liabilities and the Products (other than claims of, or causes of action arising from, fraud or relating to breaches of covenants requiring performance after the Closing Date) shall be pursuant to the indemnification provisions set forth in Article 8. In furtherance of the foregoing, each of the Purchaser and the ***Seller hereby waive, from and after Closing, to the fullest extent permitted under applicable law, any and all rights, claims and causes of action relating to this Agreement . . . , the Shares and the Assumed Liabilities (other than claims of, or causes of action arising from, fraud or relating to breaches of covenants requiring performance after the Closing Date) it may have against the other party hereto arising under or based upon any applicable law or arising under or based upon common law or otherwise . . . .***

*Id.* § 8.7(a) (emphasis added).

Further, Pathfinder acknowledged:

> that it and its representatives have been permitted full and complete access to the books and records, facilities, equipment, contracts, and other properties and assets of the Business that it and its representatives have desired or requested to see or review, and that it and its representatives have had a [sic] opportunity to meet with the officers and employees of Seller [to] discuss the Business.

*Id.* § 8.7(c). Significantly, Pathfinder also acknowledged that:

> *none of the Seller, their Affiliates or any other Person has made*
> *any representation or warranties, expressed or implied, as to the*
> *accuracy or completeness of any information regarding the*
> *Business furnished or made available to the Purchaser and its*
> *representatives, except as expressly set forth in this Agreement . .*
> *. and none of the Seller, their Affiliates or any other person shall*
> *have or be subject to any liability to the Purchaser or any other*
> *Person resulting from the distribution to the Purchaser, or the*
> *Purchaser's use of, any such information, documents or material*
> *made available to the Purchaser in any "data rooms",*
> *management presentations or in any other form in expectation of*
> *the transactions contemplated hereby except to the extent such*
> *information [is included in the Agreement].*

*Id.* § 8.7(d) (emphasis added).  Pathfinder also acknowledged that, except as expressly set forth

in the Agreement:

> *there are no representations or warranties by the Seller of any*
> *kind, express or implied, with respect to the Acquired Assets, and*
> *that the Purchaser is purchasing the Acquired Assets "as is",*
> *"where is" and "with all faults".*

*Id.* § 8.7(e) (emphasis added).  Finally, Pathfinder also acknowledged that:

> ***This Agreement and the Related Instruments contain the***
> ***entire agreement and understanding between the parties hereto***
> ***with respect to the subject matter of this Agreement and***
> ***supersede all prior agreements and understandings relating to***
> ***such subject matter.***

*Id.* § 10.4 (emphasis added).

## I.   ALL CAUSES OF ACTION SHOULD BE DISMISSED AS AGAINST THOSE DEFENDANTS AS TO WHOM NO BASES FOR LIABILITY ARE ALLEGED

There are five corporate defendants — Mayne Pharma PTY; Symbion Health, Ltd.;

Symbion Pharmacy Service PTY, Ltd.; Faulding Health-Care International Holdings, Inc.; and

Faulding Healthcare US Holdings, Inc. — as to which the Amended Complaint does not contain

a single substantive allegation.  Plaintiffs give a one-sentence description of each of these

defendants under the heading "The Parties" (AC ¶¶ 3, 4, 7, 8, 9), but none of these entities are

ever mentioned again in the Amended Complaint.  One other corporate defendant, Mayne

- 10 -

Pharma (USA) Inc., is alleged to have been the party to whom Pathfinder wired the purchase funds (AC ¶ 30). There is no other substantive allegation specifically directed to Mayne Pharma (USA) Inc. There is only one corporate defendant — FCHI — who is alleged to have been a party to the transaction at issue.

Because the Amended Complaint does not even attempt to allege any basis for liability against any of the corporate defendants other than FCHI, all of these defendants should be dismissed from this action. Fed. R. Civ. P. 8 requires the plaintiff to, at a minimum, put each defendant on notice as to why it is being sued. In other words, "[i]n order to satisfy even the liberal notice-pleading requirements of Rule 8(a)(2), in multiple defendant actions, the complaint must 'clearly specify the claims with which each individual defendant is charged.'" *Kounelis v. Sherrer,* 2005 U.S. Dist. LEXIS 20070 at * 10 (D.N.J. Sept. 6, 2005) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1248 at 313-14 (2d ed. 1990)). The Amended Complaint here completely fails to meet this standard, and therefore, all of the corporate defendants other than FCHI should be dismissed. Likewise, with respect to the individual defendant Frank Scanlan, there is not a single substantive allegation. Scanlan should also be dismissed from this action.

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER MANY OF THE DEFENDANTS

Determining whether personal jurisdiction exists over a non-resident defendant requires a two-part inquiry. First, a district court must determine whether the long-arm statute of the forum state in which it sits would permit the courts of the forum state to exercise personal jurisdiction over the defendant. Second, a district court must ask whether asserting personal jurisdiction would be consistent with the Due Process Clause of the Constitution. *International Shoe v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Imo Indus. v. Kiekert AG,*

155 F.3d 254, 259 (3d Cir. 1989); *see also Fraley v. Chesapeake & Ohio Ry. Co.,* 397 F.2d 1, 3

(3d Cir. 1968) (stating that due process analysis applied in diversity jurisdiction cases also is

applicable in non-diversity cases); *Modern Mailers, Inc. v. Johnson & Quin, Inc.,* 844 F. Supp.

1048, 1051 (E.D. Pa. 1994) (noting that Fifth Amendment due process clause limits state long-

arm statute in federal question cases in same manner that Fourteenth Amendment applies in

diversity actions).  Because New Jersey's long-arm statute is coextensive with the limits of due

process, the inquiry is collapsed into determining whether asserting personal jurisdiction over the

defendant would comply with Due Process requirements. *Mesalic v. Fiberfloat Corp.,* 897 F.2d

696, 698 (3d. Cir. 1990); N.J. Ct. R. 4:4-4; *Carteret Savings Bank v. Shishan,* 954 F.2d 141, 145

(3d Cir. 1992).

The general Due Process standard for the exercise of personal jurisdiction was

established by the Supreme Court in *International Shoe Corp. v. Washington*, 326 U.S. 310

(1945).  In *International Shoe*, the Supreme Court explained that, to exercise jurisdiction over a

nonresident defendant not present in the forum jurisdiction, the defendant must have certain

"minimum contacts" in the forum state and the exercise of a court's jurisdiction must comport

with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 362

U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).  In judging minimum contacts, a court must

focus on the relationship between the defendant's conduct, the forum state and the litigation. *See*

*Shaffer v. Heitner,* 433 U.S. 186, 204, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977); *Imo Indus.*, 155

F.3d at 259.

The extent of the contacts required for a court to exercise jurisdiction over a defendant

depends first on whether the court seeks to exercise general or specific jurisdiction. A defendant

is subject to the court's general jurisdiction, regardless of where the events occurred giving rise

- 12 -

to the action, when the defendant's contacts with the forum state are continuous and systematic. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n.9, 80 L.Ed. 2d 404, 104 S. Ct. 1868 (1984); *Imo Indus.,* 155 F.3d at 259 n.2. In contrast, a defendant is subject to the court's specific jurisdiction when the events giving rise to the action are related to the forum state and the defendant has the necessary minimum contacts with the forum state. *See Helicopteros Nacionales de Colombia,* 466 U.S. at 414 n.8; *Imo Indus.,* 155 F.3d at 259. As demonstrated below, Due Process mandates do not permit this Court to exercise either generally or specific jurisdiction over defendants Winning, Scanlan, Vidler, Symbion Health, Symbion Pharmacy, Faulding International and/or Faulding US.

## A.   General Jurisdiction

As noted above, a defendant is subject to the court's general jurisdiction, regardless of where the events occurred giving rise to the action, when the defendant's contacts with the forum state are continuous and systematic. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n.9, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984); *Imo Indus.,* 155 F.3d at 259 n.2. Proof of such contact requires a showing of extensive and pervasive activity in the forum state. *See Reliance Steel Prods. Co. v. Watson, Ess, Marshall, & Engass,* 675 F.2d 587, 589 (3d Cir. 1982).

As the declarations submitted herewith clearly demonstrate, the indisputable facts in this case do not support the exercise of general jurisdiction over Vidler, Winning, Scanlan Mayne Pharma PTY, Symbion Health, Symbion Pharmacy, Faulding International and/or Faulding US. Those declarations plainly establish that neither Vidler, Winning, Scanlan, Symbion Health, Symbion Pharmacy, Mayne Pharma PTY, Faulding International nor Faulding US have ever maintained any meaningful contacts with New Jersey, not to mention "systematic" or "continuous" contacts. *See* Vidler Dec. ¶3; Winning Dec. ¶ 4; Scanlan Dec. ¶ 3; Loftus Dec. ¶¶ 2-4; *see also Aquarium Pharms., Inc. v. Richard Boyd Enterprises, Inc.,* 1991 WL 280650 (E.D.

- 13 -

Pa. Dec. 26, 1991) (no personal jurisdiction over corporate president who submitted sworn

affidavit of attenuated and unsubstantiated contacts with Pennsylvania; plaintiffs' blanket

statements in pleading were insufficient to establish personal jurisdiction).

**B.    Specific Jurisdiction**

In like measure, Plaintiffs cannot succeed in establishing specific jurisdiction over Vidler,

Winning, Scanlan, Symbion Health, Symbion Pharmacy, Mayne Pharma PTY, Faulding

International and/or Faulding US. In order for specific jurisdiction to be properly exercised

under the Due Process Clause, the plaintiff must satisfy a two-part test. First, the plaintiff must

show that the defendant has constitutionally sufficient "minimum contacts" with the forum. *See*

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

Second, assuming minimum contacts, the court must determine, in its discretion, that the

exercise of jurisdiction nevertheless, comports with "traditional notions of fair play and

substantial justice." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.,* 75

F.3d 147, 150-51 (3d Cir. 1996) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 90

L.Ed 95, 66 S. Ct. 154 (1945)). Thus, to exercise specific personal jurisdiction over a non-

resident defendant, Plaintiffs must show that (1) the defendant has sufficient "minimum

contacts" with New Jersey, (2) the cause of action arises out of those contacts, and (3) the

exercise of jurisdiction is reasonable (*i.e.,* it does not offend traditional notions of fair play and

substantial justice). *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1122-23 (W.D.

Pa. 1997).

Moreover, to establish "minimum contacts" the defendant's in-state activities must

represent a "purposeful availment" of the privilege of conducting activities in the forum state,

thereby invoking the benefits and protections of that state's laws and making the defendant's

involuntary presence before the state's courts foreseeable. *See Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); *Imo Indus.,* 155 F.3d at 259; *Wims v. Beach Terrace Motor Inn, Inc.,* 759 F. Supp. 264, 266 (E.D. Pa 1991) (the minimum contacts "must result from the defendant's purposeful action *within or directed toward* the forum state").

As the declarations submitted herewith clearly demonstrate, whether phrased in terms of "minimum contacts," "purposeful availment," "transacting any business," "forseeability," or "invoking the benefits and protections" of laws in New Jersey, Vidler, Winning, Scanlan, Symbion Health, Symbion Pharmacy, Mayne Pharma PTY, Faulding International, and Faulding US and their activities are so lacking in contacts with New Jersey that the exercise of specific jurisdiction over them cannot pass constitutional muster. Neither Vidler, Winning nor Scanlan are citizens or domiciliaries of the State of New Jersey. Vidler Dec. ¶ 3; Winning Dec. ¶ 4; Scanlan Dec. ¶ 3. They have never resided or conducted any business in New Jersey; nor do they own or lease any real or personal property in New Jersey, or maintain any telephone lines, bank accounts or mailing or post office addresses in New Jersey. Vidler Dec. ¶3; Winning Dec. ¶ 4; Scanlan Dec. ¶ 3. They do not pay any taxes in New Jersey. Similarly, neither Symbion Health, Symbion Pharmacy, Mayne Pharma PTY, Faulding International, nor Faulding US are incorporated in New Jersey. Loftus Dec. ¶¶ 2-3. None of them conduct any business or pay any taxes in New Jersey; nor do they own or lease any real or personal property in New Jersey, or maintain any telephone lines, bank accounts or mailing or post office addresses in New Jersey. Loftus Dec. ¶¶ 2-4.

Nevertheless, plaintiffs claim that "Defendants" have "minimum contacts" with New Jersey because the "Purchase Agreement . . . was entered in the State of New Jersey, subject to the laws of said jurisdiction, and further, performance thereof was entirely within New Jersey . . . " (AC ¶18). However, neither Vidler, Winning, Scanlan, Symbion Health, Symbion Pharmacy,

- 15 -

Mayne Pharma PTY, Faulding International, nor Faulding US were parties to the Purchase

Agreement and neither Vidler, Winning nor Scanlan engaged in any negotiations in connection

with the Purchase Agreement or any transaction related thereto, whether in person, via telephone,

fax, e-mail or correspondence, or otherwise in New Jersey. Vidler Dec. ¶ 4; Winning Dec. ¶ 4;

Scanlan Dec. ¶ 3.

Even if plaintiffs could establish minimum contacts, this Court still could not conclude

that the assertion of personal jurisdiction over Vidler, Winning, Scanlan, Symbion Health,

Symbion Pharmacy, Mayne Pharma PTY, Faulding International and/or Faulding US "would

comport with 'fair play and substantial justice.'" *Burger King Corp., 471* U.S. at 476 (quoting

*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945)); *Pennzoil*

*Products Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197, 201 (3d Cir. 1988). This second inquiry

need only be applied at a court's discretion. *See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino,*

960 F.2d 1217, 1222 (3d Cir. 1992) (citing *Burger King Corp.,* 471 U.S. at 476-77). However,

courts in the Third Circuit have generally chosen to engage in this second tier of analysis in

determining questions of personal jurisdiction. *See, e.g., Mesalic v. Fiberfloat Corp.,* 897 F.2d

696, 71-02 (3d Cir. 1990) (considering notions of "fair play and substantial justice" in deciding

issue of personal jurisdiction).

For personal jurisdiction to comport with "fair play and substantial justice," it must be

reasonable to require the defendant to defend the suit in the forum state. *See World-Wide*

*Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S. Ct. 559, 565 (1980). To determine

reasonableness, a court considers the following factors: the burden on the defendant, the forum

state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

effective relief, the interstate judicial system's interest in obtaining the most efficient resolution

of controversies, and the shared interest of the several States in furthering substantive social policies. *Id.*

Because, as discussed above, Vidler, Winning, Scanlan, Symbion Health, Symbion Pharmacy, Mayne Pharma PTY, Faulding International, and Faulding US have virtually no connection to New Jersey, forcing them to defend this action in New Jersey does not comport with notions of fair play and substantial justice. The Court clearly does not have personal jurisdiction over them.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR A FEDERAL RICO VIOLATION

RICO provides a private right of action to "any person injured in his business or property by reason of a violation of section 1962 of this chapter." *Dian v. Gates,* 354 F. 3d 1169, 1171 (9th Cir. 2004), citing 18 U.S.C. § 1964(c) (2003). Section 1962, in turn, lists four separate acts which form the basis for RICO liability: (a) investing income derived from a pattern of racketeering activity in an enterprise; (b) acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity; (c) conducting the affairs of an enterprise through a pattern of racketeering activity; or (d) conspiring to commit any of the above acts. *Id.*, citing 18 U.S.C. § 1962 (a)-(d).

Plaintiffs do not specify which RICO section they claim has been violated. As noted by another court in this Circuit, "[w]ithout such specificity, it is initially difficult to evaluate the merits of Plaintiff's action, for each RICO section mandates specific pleading requirements to sustain an action thereunder." *Bloch v. State Farm Ins. Cos.*, 1991 U.S. Dist. LEXIS 14234 at *3 (E.D. Pa. Oct. 2, 1991). Leaving aside the lack of specificity, Plaintiffs have failed to allege an actionable RICO claim for the independent reasons discussed below.

A.     **The Rico Claim Must Be Dismissed Because It Is Based Upon Conduct Actionable As Securities Fraud**

It is well established that a plaintiff may not rely upon conduct actionable as securities fraud as a predicate act for a RICO claim. Specifically, as amended in 1995 by the Private Securities Litigation Reform Act, the RICO statute provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that *no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962*.

18 U.S.C. § 1964(c)(emphasis added). The Third Circuit has held that the 1995 amendment to RICO eliminated "as a predicate act for a private cause of action under [RICO], any conduct actionable as fraud in the purchase or sale of securities." *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 157 (3d Cir. 1998); *see also Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.*, 189 F.3d 321 (3d Cir. 1999).

Plaintiffs' RICO claim directly violates this prohibition, as the Amended Complaint clearly alleges that Defendants defrauded Pathfinder in connection with Pathfinder's purchase of stock from FCHI. Indeed, the Amended Complaint plainly states that plaintiffs' RICO claim is based on alleged securities fraud:

> Defendants constitute a criminal enterprise and have engaged in a pattern of racketeering activity *through the sale of the worthless securities* of Faulding Healthcare (IP) Holdings, Inc. and Faulding Consumer, Inc. and within the meaning of RICO, 18 U.S.C. § 1961 et seq., *by executing a conspiracy or enterprise to defraud Plaintiffs of millions of dollars in the purchase of the Acquired Companies* through the use of theft, deception, misrepresentation, statutory, common law, and wire fraud.

(AC ¶ 36) (emphasis added).

- 18 -

Moreover, although plaintiffs do not specifically allege violations of the federal securities laws, and instead allege that defendants have violated the Wire Fraud Act and various New Jersey criminal statutes (AC ¶ 39(g-h)), it is clear that the RICO amendment's prohibition bars Plaintiffs' claim. The Third Circuit has held that "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Bald Eagle*, 189 F.3d at 330; *see also Burton v. Ken-Crest Svcs., Inc.*, 127 F.Supp.2d 673, 676 (E.D. Pa. 2001) ("the Third Circuit has rejected efforts to elude the amendment by pleading predicate acts that, while not securities fraud by name, are actionable as securities fraud and are 'undertaken in connection with the purchase and sale of securities'") (quoting *Bald Eagle*, 189 F.3d at 329-30).

In the *Bald Eagle* case, the plaintiffs alleged that the defendant investment advisor had defrauded them in a securities investment Ponzi scheme, and sued under RICO, alleging mail, wire, and bank fraud as predicate acts. The district court dismissed the complaint based on the RICO amendment's prohibition on securities fraud as a predicate act. On appeal, the plaintiffs argued that they had stated a RICO claim because some of the conduct they alleged was not actionable as securities fraud. The Third Circuit rejected this argument, finding that all the alleged conduct was an integral part of the alleged Ponzi scheme, which was actionable as securities fraud, and thus affirmed the complaint's dismissal.

The same result is required here. Plaintiffs allege wire fraud as a predicate act (AC ¶ 39(g)), but that allegation relates to plaintiffs' wiring funds to purchase the Acquired Companies' stock, and thus, the alleged wire fraud is part and parcel of the alleged securities fraud. Plaintiffs also allege that defendants violated three New Jersey criminal statutes. Plaintiffs claim a

violation of "N.J.S.A. 2C:41-1, et seq. (to wit: theft and fraud in the offering, sale or purchase of securities)," which is obviously an allegation of securities fraud. Plaintiffs further allege violations of "N.J.S.A. 2C:20-4 (to wit: theft by deception) and N.J.S.A. 2C:5-2 (to wit: conspiracy)," but as the only deception and conspiracy alleged in the complaint relate to Pathfinder's purchase of stock from FCHI, all of the conduct alleged is actionable as securities fraud. Plaintiffs' complaint directly violates the RICO Amendment and the Third Circuit's holdings in *Mathews* and *Bald Eagle*. For this reason alone, the RICO claim should be dismissed.

**B.     The Rico Claim Must Be Dismissed Because Plaintiffs Do Not Properly Allege The Existence Of An Enterprise**

While it is unclear exactly what type of RICO violation plaintiffs are attempting to plead, under any circumstances, plaintiffs must plead the existence of an enterprise. *See* 18 U.S.C. § 1962. The United States Supreme Court has held that the "person" whose conduct is alleged to have been a violation of RICO must be a distinct entity from the "enterprise" that is alleged. *Cedric Kusher Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087, 2090 (2001). In other words, "[i]f the members of the enterprise are the same as the persons, the distinctness requirement has not been met, as the 'person' and the 'enterprise' must not be identical." *Zavala v. Wal-Mart Stores, Inc.,* 2006 U.S. Dist. LEXIS 60808 at *6 (D.N.J. Aug. 28, 2006). Here, plaintiffs merely allege that "[D]efendants constitute a criminal enterprise . . . " (AC ¶ 36). Plaintiffs have failed to allege any enterprise distinct from the defendants, who are also alleged to be the "persons" liable under RICO, and thus fail to state a valid RICO claim.

**C.     The Rico Claim Must Be Dismissed Because Plaintiffs Do Not Allege A Pattern Of Racketeering Activity**

Another required element of a RICO claim is a pattern of racketeering activity. To establish a pattern of racketeering activity, a plaintiff must allege that the defendant engaged in at

- 20 -

least two predicate acts within a ten-year period.  18 U.S.C. § 1961(5); *see also H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S. Ct. 2893, 2899 (1989).  The complaint completely fails to meet this fundamental requirement.

The complaint purports to list the predicate acts for plaintiffs' RICO claim at paragraph 39, which begins:

> Defendants' actions or conduct in furtherance of the racketeering activity or enterprise, include, but are not limited to, the following predicate acts:

The complaint goes on to list, at subparagraphs "a" through "g," the purported predicate acts, which completely ignore the definition of "racketeering activity" set forth at 18 U.S.C. § 1961(1).  Subparagraphs "a" through "f" are recitations of alleged misrepresentations relating to the value of the Acquired Companies.  Misrepresentations are not, of course, among the racketeering activities enumerated in § 1961(1).  Subparagraph "g" alleges, albeit in conclusory fashion, one instance of wire fraud, which is among the enumerated predicate acts. Subparagraph "h" alleges violations of three New Jersey criminal statutes for "theft and fraud in the offering, sale or purchase of securities," "theft by deception," and "conspiracy."  While RICO does include certain state offenses as "racketeering activity," they are limited to:

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . .

18 U.S.C. § 1961(1)(A).  The state offenses alleged by plaintiffs do not fall within this definition.

Thus, plaintiffs have alleged only a single predicate act (one instance of wire fraud), and thus have not alleged a pattern of racketeering activity.[3]  For this reason as well, the RICO claim should be dismissed.

---

[3]   While much of the case law regarding the "pattern of racketeering activity" element discusses whether the plaintiff has shown relatedness and continuity, here, where the plaintiffs have pleaded only one of the

**D.**     **To The Extent Plaintiffs Are Alleging A Rico Conspiracy Claim Under § 1962(D), This Claim Fails Because There Is No Viable Substantive Rico Claim Alleged**

As stated above, Plaintiffs do not specify which section of RICO they seek to proceed under.  In pleading their RICO claim, however, plaintiffs repeatedly allege that the defendants conspired with each other (*see* AC ¶¶ 36, 37, 38), which suggests they may be alleging a RICO conspiracy claim under § 1962(d).  To the extent plaintiffs are attempting to plead a § 1962(d) claim, this attempt fails, because a § 1962(d) claim cannot be made absent a viable claim under one of the other three substantive sections, § 1962(a), (b), or (c).  *Lightning Lube, Inc. v. WITCO Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993); *Leonard v. Shearson Lehman/American Express, Inc.,* 687 F.Supp. 177, 182 (E.D. Pa. 1988).

**E.**     **Plaintiffs Fail To Satisfy Rule 9(B)**

Because plaintiffs have based their RICO claim on allegedly fraudulent conduct, their pleading must meet the requirements of Fed. R. Civ. P. 9(b).  *See, e.g., Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir. 1998) (affirming dismissal of RICO claim based on an allegedly fraudulent scheme for failure to plead with particularity as required by Rule 9(b)).  In the Third Circuit, while a plaintiff need not always plead the date, time, and place of the alleged fraud, a plaintiff must at least use some "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Id.*  Plaintiffs fall far short of meeting this standard, as they have not pleaded the circumstances of the alleged fraud with anything close to the required degree of particularity.  Plaintiffs have not alleged who made the allegedly fraudulent misrepresentations, to whom they were made, or when they were made.  Nor have they made any attempt to allege the role played by each defendant, instead

---

enumerated predicate acts, it is not necessary to address these issues, as clearly, no pattern can be found to exist where only one act is alleged.

impermissibly collectivizing them in allegations about what the "defendants" did.[4]  Thus, even if

Plaintiffs had properly pleaded the required elements of a RICO claim — which they have not —

dismissal under 9(b) would be required.

## IV.   PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED DUE TO THEIR FAILURE TO PLEAD AN INDEPENDENT BASIS FOR FEDERAL SUBJECT MATTER JURISDICTION

Since Plaintiffs' federal claims must be dismissed, this Court must also dismiss Plaintiffs'

state law claims because Plaintiffs have failed to plead an independent basis for federal subject

matter jurisdiction over those claims.  Although Plaintiffs purport to assert federal subject matter

jurisdiction based upon diversity of citizenship, Plaintiffs, as demonstrated below, have failed to

discharge their burden to adequately plead diversity jurisdiction.  *See Poling v. K Hovnanian*

*Enterprises,* 99 F. Supp. 2d 502 (D.N.J. 2000).

"It is . . . well established that when jurisdiction depends upon diverse citizenship, the

absence of sufficient averments or of facts in the record showing such required diversity of

citizenship is fatal and cannot be overlooked by the court, even if the parties fail to call attention

to the defect, or consent that it may be waived." *Carlsberg Resources Corp. v. Cambria Savings*

*and Loan Assoc.,* 554 F.2d 1254, 1256 (1977) (citing *Thomas v. Board of Trustees,* 195 U.S.

207, 211, 49 L. Ed. 160, 25 S. Ct. 24 (1904)).  The allegations fail to establish diversity

jurisdiction unless they establish that diversity is complete, *i.e.*, if there is no plaintiff and no

defendant who are citizens of the same state. *Wisconsin Department of Corrections v. Schacht,*

524 U.S. 381, 388, 118 S. Ct. 2047, 2052, 141 L. Ed 2d 364, 372 (1998).

Thus, in order to state subject matter jurisdiction on the basis of complete diversity of the

parties, plaintiffs must affirmatively plead the citizenship of each of the individual defendants.

---

[4]   For further discussion of Rule 9(b) as applied to this case, see Section V.C below.

*See Chemical Leaman Tank Lines, Inc. v. Aetna Casualty Ins. & Surety Co.,* 177 F. 3d 210, 222

n.13 (3d Cir. 1999). Corporate entities have dual citizenship for purposes of diversity and

plaintiffs must affirmatively plead both the state of incorporation and the corporation's principal

place of business. 28 U.S.C. §1332(c); *see also Carolina Casualty Ins. Co. v. Insurance Co. of*

*North America,* 595 F.2d 128, 130 n.1 (3d Cir. 1979). It is only when these facts are

affirmatively pleaded that the Court can properly determine whether complete diversity of the

parties in fact exists and thus whether the Court has jurisdiction to adjudicate the matter.

     Here, Plaintiffs' allegations are inadequate in several respects that prove fatal to their

assertion of diversity jurisdiction. Although Hinchen and Scanlan are alleged to be "citizens" of

the United States, neither is alleged to be the "citizen" of any state. (*See* AC ¶ 18). However, a

plaintiff who seeks to invoke diversity jurisdiction of the federal courts must plead "citizenship"

of a state distinctly and affirmatively. *Strain v. Harrelson Rubber Co.,* 752 F.2d 888, 889 (5th

Cir. 1984). Allegations of mere United States citizenship are insufficient. *Avins v. Hannu,* 497

F. Supp. 930, 933 n.7 (E.D. Pa. 1980).

     In like measure, although Faulding Holdings, Faulding International and Faulding US are

alleged to be Delaware corporations, Plaintiffs have failed to plead their principal places of

business. In the absence of an allegation of a corporation's principal place of business,

Plaintiffs' jurisdictional allegations are inadequate to establish diversity jurisdiction. *Carolina*

*Casualty Ins.,* 595 F.2d at 130 n.1. In the absence of federal question or diversity jurisdiction,

this Court should decline to exercise jurisdiction over Plaintiffs' pendent state law claims.

*United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1996); *see also* 28 U.S.C. §

1367(c)(3).

## V.   PLAINTIFFS' STATE LAW CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if this Court decides to retain jurisdiction over Plaintiffs' state law claims, these claims must, nevertheless, be dismissed because each of Plaintiffs' state law claims fail to state a claim upon which relief can be granted.

### A.   Count Two Fails To State A Claim For A Violation Of The New Jersey Rico Statute

Plaintiffs' second cause of action, under the New Jersey RICO statute, N.J.S.A. § 2C:41-1, fails to state a claim for many of the same reasons that their federal RICO claim fails. Like the federal RICO statute, the New Jersey RICO statute contains four subsections, *id.* at § 2C:41-2(a-d), and again, Plaintiffs fail to specify which subsection they purport to proceed under. However, this lack of clarity does not cover up the fatal flaws in this claim.

First, no matter which subsection Plaintiffs are proceeding under, they must properly allege that defendants have engaged in a pattern of racketeering activity. *See id.* The state statute provides that a "pattern of racketeering activity" requires (1) "engaging in at least two incidents of racketeering conduct . . . within ten years; and (2) a showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Id.* at § 2C:41-1(d). Here, as discussed above, because Plaintiffs have alleged only a single, isolated incident of racketeering activity, they have not alleged a pattern of racketeering activity, and accordingly, have not stated a claim under the New Jersey RICO statute.[5]

---

[5]   Further, as discussed above in connection with the federal RICO claim, Plaintiffs' failure to plead with the specificity required by Fed. R. Civ. P. 9(b) is also fatal to this claim.

**B.**   **Count Three Fails To State A Claim For Common Law Conspiracy**

Plaintiffs' conclusory allegations of civil conspiracy also fail as a matter of law.  To state

a claim for conspiracy under New Jersey law, a plaintiff must allege:  "(1) a combination of two

or more persons; (2) a real agreement or confederation with a common design; (3) the existence

of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof

of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331

F.3d 406, 414 (3d Cir. 2003); *see also Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460,

496 (D.N.J. 1998).  While the plaintiff need not provide direct evidence of an agreement between

the conspirators, it must allege facts from which it can be inferred that "the conspirators had

reached an understanding." *Eli Lilly*, 23 F. Supp. 2d at 496.  It is important to note that "the

gravamen of a civil conspiracy charge is not the unlawful agreement, but rather the 'underlying

wrong which, absent the conspiracy, would give a right of action.'" *Peters v. U.S. Department of

Housing & Urban Dev't*, 2006 U.S. Dist. LEXIS 4727 at *23 (D.N.J. Feb. 1, 2006) (quoting

*Morgan v. Union County Bd. of Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993).  In

other words, "[a] conspiracy is not actionable absent an independent wrong. . .." *Eli Lilly*, 23 F.

Supp. 2d at 497.

Here, Plaintiffs have made only the most general allegations in support of their

conspiracy claim.  (*See* AC ¶¶ 47-48).  They have not alleged that the defendants had any

agreement or understanding, let alone any facts from which this could be inferred.  Nor have

Plaintiffs properly alleged special damages, as they allege only that "[s]aid conspiracy caused

damages to Plaintiffs' business and property." (AC ¶ 49).  Because Plaintiffs have completely

failed to allege the basic elements of a conspiracy, this claim must be dismissed.

Additionally, as set forth in other sections of this memorandum, Plaintiffs have not stated

any viable underlying claim to support the conspiracy claim, as all of their substantive claims fail

to state a viable cause of action.  As in the *Eli Lilly* case, because there is no "independent

wrong" that has been properly alleged, the conspiracy claim must be dismissed.  *See id.*[6]

C.      **Count Four Fails To State A Claim For Fraudulent Misrepresentation**

        Plaintiffs have also failed to state a claim for fraudulent misrepresentation.  To state such

a claim, a plaintiff must allege:  "(1) a material misrepresentation of a presently existing or past

fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the plaintiff rely

on that misrepresentation; (4) reasonable reliance on the misrepresentation by the plaintiff; and

(5) resulting damages."  *Peters,* 2006 U.S. Dist. LEXIS 4727 at * 13; *Gennari v. Weichert Co.

Realtors,* 148 N.J. 582, 610 (1997).

        Plaintiffs cannot state a claim for fraudulent misrepresentation because the alleged

misrepresentations upon which they base this claim are barred by the parol evidence rule.  The

parol evidence rule "generally bars the use of extrinsic evidence [such as oral representations] to

interpret a document unless that evidence is offered to clarify an ambiguity."  *Days Inns of

America, Inc. v. VNR, Inc.*, 1999 U.S. Dist. LEXIS 23434 at * 27 (D.N.J. March 23, 1999).

While there is an exception to the parol evidence rule that permits the use of extrinsic evidence

to prove fraud in the inducement, "a party may not seek to contradict the express terms of a

writing to avoid obligations he knowingly assumes."  *Alexander v. CIGNA Corp.*, 991 F. Supp.

427, 437 (D.N.J. 1998).  As one New Jersey court has explained, "the fraud exception to the

parol evidence rule is not without its limits.  There is a distinction between fraud regarding

---

[6]     This claim should also be dismissed because it is barred by the express language of the Purchase Agreement, in
which Pathfinder agreed that its exclusive remedy for any claims relating to the Purchase Agreement would be
pursuant to the indemnification provisions in Article 8. See Hernandez Dec., Ex. 1, § 8.7(a).  Pathfinder
expressly waived any claims relating to the Purchase Agreement, other than those arising from fraud or a breach
of a covenant in the Agreement. Id.  The conspiracy claim is not made pursuant to the Agreement's indemnity
provisions, nor does it arise from fraud or the breach of any covenant in the Agreement. New Jersey's courts
"have traditionally upheld contractual limitations of liability." *Marbro, Inc. v. Borough of Tinton Falls*, 297 N.J.
Super. 411, 417 (Law Div. 1996); *see also Professional Cleaning and Innovative Bldg. Serv., Inc. v. Kennedy
Funding, Inc.*, 2005 U.S. Dist. LEXIS 17024 at * 5 (D.N.J. Aug. 11, 2005).

matters expressly addressed in the integrated writing and fraud regarding matters wholly extraneous to the writing." *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 281 N.J. Super. 570, 574 (App. Div. 1991). Thus, for example, in *St. Matthew's Baptist Church v. Wachovia Bank National Association*, 2005 WL 1199045 (D.N.J. May 18, 2005), this Court dismissed fraudulent and negligent misrepresentation claims on a Rule 12(b)(6) motion, because the alleged misrepresentations were contradicted by the express language of the agreements between the parties. *See also Filmlife*, 598 A.2d at 1236-37 (affirming dismissal of fraud claim on pre-answer motion because plaintiffs' claim was based on extrinsic evidence regarding matters expressly addressed in the parties' agreement); *Peterson v. Mister Donut of America, Inc.*, 1988 U.S. Dist. LEXIS 6570 at *12-14 (D.N.J. July 6, 1988) (finding fraud claim barred by specific disclaimers in agreement).

Dismissal is also required here. Plaintiffs have set forth the following alleged misrepresentations: (a) 2002 sales figures; (b) the Sea & Ski brand's share in the market; (c) accounting for return items; (d) the resolution of a staining problem; (e) sales projections; (f) brand recognition; (g) that CVS Corporation was a major account with good projected sales; (h) that a major customer in Canada was a non-return business; and (i) the balance owing from a Canadian distributor. (AC ¶ 25). However, these alleged representations are directly contradicted by the Purchase Agreement, in which Pathfinder acknowledged that FCHI had not made any representation or warranty

> *as to the accuracy or completeness of any information regarding the Business . . . and none of the Seller, their Affiliates or any other person shall have or be subject to any liability to the Purchaser . . . resulting from the distribution to the Purchaser, or the Purchaser's use of, any such information, documents or material made available to the Purchaser in any 'data rooms,' management presentations or in any other form . . .*

Hernandez Dec., Ex. 1 at § 8.7(d) (emphasis added). Further, Pathfinder acknowledged that "there are no representations or warranties by the Sellers of any kind, express or implied, with respect to the Acquired Assets, and that the Purchaser is purchasing the Acquired Assets "as is", "where is" and "with all faults". *Id.* § 8.7(e). Because these contractual provisions contradict the alleged representations of the Acquired Companies' value that Plaintiffs assert as the basis of their fraud claim, Plaintiffs are barred from using evidence of these alleged misrepresentations, requiring dismissal of this claim.

Dismissal is also required because Plaintiffs have failed to plead facts demonstrating that they reasonably relied on the alleged misrepresentations. Nor can Plaintiffs possibly plead this element. Plaintiffs allege that they relied on oral representations made prior to Pathfinder entering the Purchase Agreement, but there is simply no possible way for Plaintiffs to plead that such reliance was reasonable given that in the Purchase Agreement Pathfinder expressly disclaimed reliance on any representations or warranties not contained in the Agreement. *See Koch Materials Co. v. Shore Slurry Seal, Inc.,* 2005 U.S. Dist. LEXIS 9486 at * 18-20 (D.N.J. Jan. 13, 2005) (finding defendant was not justified as a matter of law in relying on plaintiff's representations where written agreement stated that neither party relied on the other's representations, applying Kansas law but noting result would be the same under New Jersey law); *Alexander v. CIGNA Corp.,* 991 F. Supp. 427, 436 (D.N.J. 1998) (finding that it was "manifestly unreasonable" for plaintiffs to rely on previous representations when express language of contract nullified those representations). In light of Pathfinder's agreement here, that it was not relying on any extra contractual representations, it simply cannot plead that it reasonably relied on alleged misrepresentations made before the date of the Purchase Agreement.

Additionally, pursuant to Fed. R. Civ. P. 9(b), all fraud claims must be pleaded with specificity, in order to "put defendants on notice of the precise misconduct with which they are charged and also to prevent spurious claims of immoral or fraudulent behavior." *Peters*, 2006 U.S. Dist. LEXIS 4727 at * 14. The Third Circuit has held that, while the exact details such as dates, times, or locations for each alleged misrepresentation need not be pleaded, a plaintiff must "inject precision and some substantiation" into its fraud claims. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). This means that when multiple defendants are sued for fraud, as here, "the plaintiff must plead fraud with particularity as to each individual defendant, as opposed to clustering together their allegedly fraudulent acts." *Peters*, 2006 U.S. Dis. LEXIS 4727 at * 14; *see also Seville*, 742 F.2d at 791 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'"); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) ("Pleadings containing collectivized allegations against 'defendants' do not suffice"); *Eli Lilly*, 23 F. Supp. 2d at 492 (plaintiff must "inform[ ] each defendant of the nature of its alleged participation in the fraud").

The Amended Complaint clearly falls far short of these standards. Plaintiffs have not alleged which of the eleven named defendants made any of the alleged misrepresentations or when anyone made them. Nor is there any other indication of the various defendants' roles in the alleged fraud. As such, the Amended Complaint runs directly afoul of the prohibition against collectivizing defendants in fraud allegations. Plaintiffs have also failed to identify any of the "Pathfinder personnel" to whom the misrepresentations were allegedly made. *See Eli Lilly*, 23 F. Supp. 2d at 492 (dismissing fraud claim for failure to comply with Rule 9(b), noting that "the Complaint does not indicate who the speakers were or to whom they were speaking"). Plaintiffs

here have not even come close to meeting the requirements of Rule 9(b), requiring dismissal of this claim.

**D.    Count Five Fails To State A Claim For Negligent Misrepresentation**

Plaintiffs have not stated a claim for negligent misrepresentation. To plead a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that "the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied." *Eli Lilly,* 23 F. Supp. 2d at 493; *see also Kaufman v. I-Stat Corp.,* 165 N.J. 94, 109 (2000). Plaintiffs' attempt to state a negligent misrepresentation claim fails for several reasons. First, just as with the fraudulent misrepresentation claim, plaintiffs' negligent misrepresentation claim is barred by the parol evidence rule, because the alleged misrepresentations are contradicted by the language of the Purchase Agreement. *See St. Matthew's Baptist Church,* 2005 WL 1199045 at *5-7.

Second, Plaintiffs have not pleaded justifiable reliance, nor can they in light of the express language of the Purchase Agreement, as discussed above in connection with their fraudulent misrepresentation claim. *See Kaufman,* 754 A.2d at 1195 ("[t]he element of reliance is the same for fraud and negligent misrepresentation"); *Eli Lilly,* 23 F. Supp. 2d at 493 (dismissing negligent misrepresentation claim where plaintiff failed to plead any facts showing it justifiably relied on defendants' alleged misrepresentations); *Panella v. O'Brien,* 2006 U.S. Dist. LEXIS 59880 at * 2628 (D.N.J. Aug. 24, 2006) (dismissing fraud and negligent misrepresentation claims for failure to plead reasonable reliance).

Third, although Rule 9(b) may not apply to Plaintiffs' pleading of a negligent misrepresentation claim, Rule 8(a) still applies, and the Amended Complaint does not even meet the Rule 8(a) standard.[7] The Amended Complaint does not allege who made the alleged

---

[7]    For a more detailed discussion of Rule 8, see Point I above.

misrepresentations, when they were made, or to whom they were made. There is simply not enough in the Amended Complaint to put the defendants on notice of what this claim is based upon.

Finally, Plaintiffs' negligent misrepresentation claim is barred by the express limitation-of-remedies provision in the Purchase Agreement. This claim is not based on fraud or on any covenant in the Agreement. Thus, as explained above in connection with Count Three (civil conspiracy), this claim is barred by the Purchase Agreement's express provisions.

**E.    Count Six Fails to State a Claim for Tortious Interference With Potential Economic Benefit**

Plaintiffs have also attempted to plead a claim for tortious interference with potential economic benefit. Plaintiffs allege that "[a]t or about the time Defendants misrepresented that Associated National Brokerage (hereinafter 'ANB') had no right to credit any product returned from its customer's non-return business, they had only recently entered into an agreement with ANB agreeing to just the opposite terms." (AC ¶ 60). Plaintiffs claim that "it was represented" (by whom is not stated) to ANB's president that his debt to FCI would be forgiven and that ANB would be credited for returns. (AC ¶61). Plaintiffs go on to allege that Defendants' alleged statements to the contrary put Pathfinder "on a collision course with ANB," which led to unspecified litigation between the companies. (AC ¶ 62). Plaintiffs claim that they "intended to continue to pursue business with ANB after the acquisition" (AC ¶ 63), and allege that Defendants' statements to Pathfinder constitute malicious interference with "Plaintiffs' potential economic benefit from ANB." (AC ¶64).

To state a claim for tortious interference with a prospective economic relationship, a plaintiff must plead facts establishing the following elements: (1) that the plaintiff had a "reasonable expectation of economic advantage," (2) that the defendant interfered intentionally

- 32 -

and with malice, (3) "the interference caused the loss of the prospective gain," and (4) that "the injury caused damage." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-752 (1989); *see also Only v. Ascent Media Group, LLC,* 2006 U.S. Dist. LEXIS 72676 at * 28 (D.N.J. Oct. 5, 2006). Plaintiffs have failed to plead the second and third elements. As to the second element, Plaintiffs have not pleaded that defendants interfered with Plaintiffs' prospective economic relationship with ANB intentionally and with malice. The facts as pleaded do not indicate that defendants, even if they made the alleged misrepresentations, intended to interfere with Pathfinder's prospective relationship with ANB. *Cf. Printing Mart*, 563 A.2d at 40 (finding that plaintiff sufficiently alleged this element where the clear inference from the allegations was that the defendant "intended that [plaintiff] lose the job and that his actions were calculated to produce that result").

As to the third element, Plaintiffs have also failed to plead that the alleged interference caused the loss of the prospective gain from ANB. Plaintiffs allege in conclusory fashion that defendants' statements to Pathfinder "led to litigation" between Pathfinder and ANB, but there is no indication as to what the litigation is about, that Pathfinder has attempted to solicit business from ANB, or that ANB has refused to do business with Pathfinder. Plaintiffs have not properly pleaded a tortious interference claim, requiring dismissal of Count Six.

Finally, this claim is also barred by the limitation-of-remedies provision in the Purchase Agreement, as it is neither based on fraud nor related to any covenant in the Agreement, as set forth above in connection with Count Three (civil conspiracy).

**F.      Count Seven Fails to State a Claim for Breach of Contract**

Plaintiffs have also failed to state a claim for breach of contract. To state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) the existence of a contract, (2) a breach of that contract, (3) damages arising from the alleged breach, and (4) a showing that

the plaintiff has performed all of his/her own contractual duties." *Peters*, 2006 U.S. Dist. LEXIS

4727 at *10.  As an initial matter, it is important to note that only one of the eleven named

defendants was actually a party to the Purchase Agreement -- FCHI.  Because none of the other

defendants was a party to Purchase Agreement, they cannot be liable for any alleged breach, and

thus, this claim must be dismissed as against all of the defendants other than FCHI.  *See*

*Overseas Food Trading, Ltd. v. Agro Acietunera S.A.,* 2006 U.S. Dist. LEXIS 60814 at * 7-11

(D.N.J. Aug. 28, 2006) (dismissing breach of contract claim where complaint failed to plead the

existence of a contract between plaintiff and defendant); *Peters*, 2006 U.S. Dist. LEXIS 4727 at

*11 (dismissing breach of contract claim where the plaintiffs did not allege they were in a

contractual relationship with the defendant).

With respect to the individual defendants there can be no liability for the alleged breach

of the contract between Pathfinder and FCHI, because "[g]enerally, of course, an agent of a

disclosed principal, even one who negotiates and signs a contract for her principal, does not

become a party to the contract." *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d

Cir. 1999) (finding that directors and officers of defendant corporation were not bound by

corporation's arbitration agreement).  As the New Jersey Supreme Court has put it, "if a contract

is made with a known agent within the scope of his authority for a known or disclosed principal,

the agent cannot be held liable thereon." *Stopford v. Boonton Molding Co., Inc.*, 56 N.J. 169,

187 (1970) (reversing judgment against officer and manager of defendant corporation based on

agreement made by manager on corporation's behalf).  Here, there is no allegation that FCHI

was an undisclosed principal.  Nor would such an allegation be possible, as the Purchase

Agreement itself makes clear that it was the principal, FCHI, that was the party to that

agreement.  *See* Hernandez Dec., Ex. 1, title page and p.1.  Thus, the individual defendants

- 34 -

cannot possibly be held liable for any alleged breach of the Purchase Agreement, and this claim should be dismissed as against them. *See, e.g., Overseas Food Trading, Ltd. v. Agro Acietunera S.A.*, 2006 U.S. Dist. LEXIS 60814 at * 8-11 (D.N.J. Aug. 28, 2006) (granting motion to dismiss breach of contract claims as against agent of disclosed principal).

Even with respect to FCHI, which was a party to the Purchase Agreement, Plaintiffs have failed to state a cause of action for breach of contract. Plaintiffs allege that "defendants" breached the Purchase Agreement by: (1) misrepresenting due diligence information and failing to make full disclosure of information requested by Pathfinder (AC ¶ 68); (2) by failing to provide accounts receivable, notes receivable, and other indebtedness owed by third parties (AC ¶ 69); (3) by providing "worthless" stock for the Acquired Companies (AC ¶ 70); and (4) by failing to provide requested documentation regarding the Acquired Companies' net worth, and specifically, the "negative receivables" relating to return product (AC ¶ 71). The Purchase Agreement contains provisions that negate these claims of breach. For example, with respect to the assertions that FCHI breached the Purchase Agreement by misrepresenting information and failing to make full disclosures during due diligence (AC ¶ 68), and by failing to provide requested documentation regarding the Acquired Companies' net worth, and specifically, the "negative receivables" relating to return product (AC ¶ 71), Pathfinder agreed that it had "full and complete access to the books and records" of the Acquired Companies that it "desired or requested to see or review," and that FCHI did not make any representations "as to the accuracy or completeness of any information regarding the Business furnished or made available to [Pathfinder], except as expressly set forth in this Agreement . . ." *See* Hernandez Dec., Ex. 1, § 8.7 (c, d).

- 35 -

Similarly, with respect to the assertion that FCHI breached the Purchase Agreement by failing to provide accounts receivable, notes receivable, and other indebtedness owed by third parties (AC ¶ 69), there is no provision in the contract addressing these issues and such an allegation runs contrary to Pathfinder's representation that it had "full and complete access to the books and records" of the Acquired Companies that it "desired or requested to see or review." *See* Hernandez Dec., Ex. 1, § 8.7 (c).

Because Plaintiffs have failed to allege conduct that is actually in breach of any of the provisions of the Purchase Agreement, they have not stated a claim for breach of contract against FCHI. *See Peters*, 2006 U.S. Dist. LEXIS 4727 at *11 (dismissing breach of contract claim where plaintiffs did not identify facts that might constitute a breach by the defendants of a contract with the plaintiffs). Nor have they stated a claim for breach as against the other defendants who were not parties to the Purchase Agreement.

Finally, this claim is also barred by the limitation-of-remedies provision in the Purchase Agreement. It is not based on fraud, and Plaintiffs do not allege that FCHI breached any covenant contained in the Agreement. Thus, for the same reasons set forth above in connection with Count Three (civil conspiracy), this claim should be dismissed.

## G.  Count Eight Fails to State a Claim for Breach of Implied Duty of Good Faith and Fair Dealing

Plaintiffs allege their eighth claim, for breach of the implied duty of good faith and fair dealing, in only the most conclusory terms, alleging nothing more than that "[d]efendants were obligated under an implied covenant of good faith and fair dealing pursuant to their contractual undertakings with Plaintiffs," (AC ¶ 74) and that "[d]efendants breached the said covenant resulting in damages to Plaintiffs." (AC ¶ 75). Once again, Plaintiffs have failed to state a valid claim for relief.

- 36 -

Under New Jersey law, there is an implied covenant of good faith and fair dealing in all contracts. *Ass'n Group Life, Inc. v. Catholic War Veterans of United States,* 61 N.J. 150, 153 (1972). Of course, "[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Wade v. Kessler Institute,* 343 N.J. Super. 338, 345 (App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002). Here, only one of the eleven named defendants, FCHI, is alleged to have been a party to the Purchase Agreement with Pathfinder. There is no contractual relationship between plaintiffs and the other ten defendants. Accordingly, there can be no claim for breach of the implied covenant of good faith and fair dealing as to those ten defendants. *See, e.g., Sutton v. New Century Fin. Serv.,* 2006 U.S. Dist. LEXIS 68300 at * 5 (D.N.J. Sept. 11, 2006) (finding complaint failed to demonstrate implied covenant of good faith and fair dealing even existed, where the complaint did not allege that the parties entered into a contract).

Even as to FCHI, Plaintiffs have not stated an actionable claim. Because their pleading is so conclusory, it is not clear exactly how Plaintiffs contend that FCHI breached the duty of good faith and fair dealing. Moreover, "the implied covenant of good faith and fair dealing cannot override an express term in a contract . . . " *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 244 (2001). To the extent that what Plaintiffs claim here is that FCHI breached the implied covenant by making misrepresentations during due diligence, this claim fails, because, as discussed above, the express terms of the Purchase Agreement provide that FCHI made no representations other than those specifically contained in the Agreement.

This cause of action is further barred by the Purchase Agreement's limitation of remedies, as it is not based upon fraud and does not relate to any covenant in the Agreement.

- 37 -

For the same reasons set forth above in connection with Count Three (civil conspiracy), this claim should be dismissed.

## CONCLUSION

For all the reasons set forth above, the Court should dismiss the Amended Complaint in its entirety and with prejudice.

Respectfully submitted,

Dated:  December 8, 2006

By:  s/William D. Wallach
      William D. Wallach
      Richard Hernandez
      **McCARTER & ENGLISH, LLP**
      Four Gateway Center
      100 Mulberry Street
      Newark, New Jersey 07102

      Joseph Goldberg
      Joel M. Wolosky
      **HODGSON RUSS LLP**
      230 Park Avenue, 17th Floor
      New York, New York 10169
      Attorneys for Defendants